UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
FEDERAL DEPOSIT INSURANCE ) Civil Case No. C14-0545RSL
CORPORATION, )
)
                     Plaintiff, ) ORDER DENYING MOTIONS FOR
   v. ) RECONSIDERATION
)
ARCH INSURANCE COMPANY, *et al*, )
)
                     Defendants. )
_____)

This matter comes before the Court on the insurer defendants' motions for reconsideration. Dkt. # 188,[1] 190, and 191. Motions for reconsideration are disfavored in this district and will be granted only upon a "showing of manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1). Defendants assert that the Court erred in finding that the definition of "Loan Originator" was ambiguous, that the Court misapplied Washington law when it interpreted an ambiguity in the insurance policy in favor of the insured, and that "new facts" establish that the causal relationship between the alleged fraud and the loss was indirect.

The first two arguments are unpersuasive. The parties took opposing positions regarding the meaning of the phrase "which originates" in the definition of "Loan Originator." Plaintiff's

---

[1] The "Notice of Motion" filed at Dkt. # 187 is hereby STRICKEN.

ORDER DENYING MOTIONS
FOR RECONSIDERATION - 1

1 preferred interpretation is consistent with other provisions of the contract (most notably the
2 discovery provision) and is, at the very least, reasonable. In light of this ambiguity, the Court
3 construed the phrase "against the insurer and in favor of the insured" as provided by Washington
4 law. Holden v. Farmers Ins. Co. of Wash., 169 Wn.2d 750, 757 (2010). Defendants' suggestion
5 that the Court misapprehended the record regarding how the insuring agreement was drafted is
6 unsupported. The record was clear on this point.

7 With regards to the third argument, defendants offer new evidence showing that the FDIC
8 has no idea what its predecessor, Washington Mutual ("WaMu"), paid the loan originators for
9 the fraudulent loans and argue that plaintiff must, therefore, be seeking to recover the amounts
10 paid to repurchase the loans from third parties. Thus, the argument goes, Universal Mortg. Corp.
11 v. Württembergische Versicherung AG, 651 F.3d 759, 763 (7th Cir. 2014), compels the
12 conclusion that the loss for which the FDIC seeks coverage arose out of WaMu's contractual
13 obligation to repurchase fraudulent loans and did not arise "directly" from the loan originators'
14 dishonest or fraudulent acts.

15 For the reasons stated in the Court's previous order, a common sense understanding of the
16 risks for which WaMu negotiated coverage and the relationships between the entities shows that
17 WaMu suffered a loss the moment it delivered funds to CIP Mortgage Corporation and Coastal
18 Capital and received worthless paperwork in return. Dkt. # 184 at 8. Under Washington law, a
19 loss generally occurs under a fidelity bond when the money or other covered property is
20 misappropriated through employee dishonesty or fraud. See Fireman's Fund Ins. Co. v. Puget
21 Sound Escrow Closers, Inc., 96 Wn. App. 227, 234-35 (1999). The amount of the original loss
22 did not remain static over time, however. The fraudsters made payments on some of the loans,
23 and the FDIC would be hard-pressed to justify pursuing a claim for losses that have already been
24 recovered. The fact that the amount at issue corresponds to the unpaid principal balances of the
25 loans originated by CIP and Coastal Capital reflects the reality of plaintiff's actual loss and does
26

not resolve the "directly resulting" issue. If the FDIC were attempting to collect penalties WaMu was contractually obligated to pay when the loans were repurchased or other types of consequential damages arising from the fraudulent loans, those damages would arguably be indirect: but defendants offer no evidence of such payments or demand for recovery. Construing the record in the light most favorable to plaintiffs, the unpaid principal balance on the fraudulent loans corresponds to the outstanding losses directly attributable to the loan originators' fraud. In addition, the Seventh Circuit's interpretation of "directly resulting" is not dispositive. Under Washington law, policy provisions requiring that a loss result directly from fraudulent or dishonest acts means that the acts must have been the proximate cause of the loss. See <u>Hanson PLC v. Nat'l Union Fire Ins. of Pittsburgh, PA</u>, 58 Wn. App. 561, 572-73 (1990). Defendants' reliance on <u>Universal Mortgage</u> is unavailing as a matter of fact and law.

The Court acknowledges National Union's reservation of the right to contest factual statements that were not disputed in the context of this motion.

For all of the foregoing reasons, defendants' motions for reconsideration are DENIED.

Dated this 1st day of December, 2017.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge